NOT DESIGNATED FOR PUBLICATION

Nos. 117,426
117,427

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LANCE L. FRANKLIN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; CHERYL A. RIOS, judge. Opinion filed June 29, 2018.
Affirmed in part and dismissed in part.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Rachel L. Pickering*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., ATCHESON and BRUNS, JJ.

PER CURIAM: Lance L. Franklin appeals sentences the Shawnee County District
Court imposed on him following his guilty pleas in separate cases because he has to serve
the prison time consecutively rather than concurrently—an outcome he says conflicts
with the plea agreement. The sentences conform to the statutory guidelines and,
therefore, cannot be appealed. We dismiss that part of Franklin's appeal. Franklin also
appeals a 90-day jail term the district court imposed on him for direct contempt on the
theory his conduct should have been treated as indirect contempt. He is mistaken. We
affirm the contempt finding and the punishment.

1

We condense the somewhat circuitous procedural path of these cases given the issues on appeal and their appropriate disposition. The Shawnee County District Attorney charged Franklin with a host of crimes, including several serious felonies, committed against a woman with whom he had an intimate personal relationship. During the trial in December 2015, Franklin repeatedly violated an order in limine and otherwise behaved obstreperously. Toward the end of the trial, Franklin sucker punched his court-appointed lawyer in full view of the jurors. The lawyer fell to the floor with a broken nose.

The district court excused the jurors and recessed the trial. The district court quite appropriately denied Franklin's motion for a mistrial, appointed substitute counsel for Franklin, and extended the recess to allow the new lawyer to become familiar with the case and to accommodate significant matters several of the jurors had scheduled during and immediately after the holiday season. Ultimately, one of the jurors could not continue and had to be excused. Franklin declined to stipulate to a jury of less than 12 persons, as he had every right to do. The district court declared a mistrial for that reason.

In the meantime, the district court found Franklin guilty of direct contempt of court for his conduct in punching his lawyer and, thereby, substantially impeding the judicial process. The district attorney had also filed a separate case against Franklin charging him with aggravated battery of his lawyer.

After declaring the mistrial, the district court set aside the contempt finding against Franklin and recused from any further proceedings. A different district court judge took up the matters.

The district attorney and Franklin's new lawyer worked out a plea agreement for both pending criminal cases: In the case involving his former domestic partner, Franklin would plead guilty to aggravated robbery and the remaining charges would be dropped;

2

in the case against his former lawyer, he would plead guilty to severity level 4 aggravated battery. As part of the agreement, the district attorney and Franklin would make a joint recommendation for a controlling prison sentence of 247 months. According to the written plea agreement and the discussion at the plea hearing, the controlling sentence would be achieved in one of two ways. If Franklin had a criminal history category of A— something everybody, including Franklin, believed to be correct—he would receive a 247-month sentence for the aggravated robbery conviction to be served *concurrent* to a 41-month sentence for the aggravated battery conviction. If Franklin had a criminal history category of B, he would receive a 206-month sentence for the aggravated robbery conviction to be served *consecutive* to the 41-month sentence for the aggravated battery conviction. All of the prison terms reflected presumptive punishments under the sentencing guidelines.

Although the written agreement and the discussion at the plea hearing could be characterized as something less than crystal clear, what does come through with unmistakable clarity is this: Franklin bargained for and expected to receive a controlling prison sentence of 247 months under the terms of the plea deal. He also understood that the district court was not bound to the plea agreement and could impose any lawful sentence.

At the sentencing hearing, the district court found that Franklin had a criminal history category of B and followed the plea agreement by imposing consecutive sentences of 206 months and 41 months. Franklin personally protested that he had not agreed to consecutive sentences. His lawyer indicated the disposition conformed to everyone's understanding of the plea agreement.

The district court convened a contempt trial at which the judge who presided over the disrupted jury trial testified about Franklin's conduct, particularly the attack on his lawyer and the resulting problems. Franklin, acting through his new lawyer, offered no

evidence. The district court found Franklin guilty of direct contempt of court and sentenced him to serve 90 days in jail.

Franklin has appealed.

For his first point, Franklin disputes the district court properly imposed consecutive sentences. As we have mentioned, the terms of imprisonment the district court imposed are within the presumptive statutory guidelines. We have no jurisdiction to review presumptive sentences. K.S.A. 2017 Supp. 21-6820(c)(1). And a district court's decision to impose consecutive rather than concurrent guidelines sentences does not present an appealable issue. *State v. Frecks*, 294 Kan. 738, 739, 280 P.3d 217 (2012). Because we have no jurisdiction to consider this issue, we dismiss that portion of Franklin's appeal.

Defendants who plead guilty, feel aggrieved by their sentences, and believe they have been misled or otherwise have been taken advantage of may file motions with the district court to withdraw their pleas. See *State v. Aguilar*, 290 Kan. 506, 511, 231 P.3d 563 (2010). A defendant may appeal the denial of that motion. Franklin, however, did not take that avenue in the district court.

Franklin drafted and submitted his own supplemental brief with an accompanying motion on June 11, 2018, long after any conceivable filing deadline had passed. To extend Franklin every possible consideration, we granted his motion and directed that the Clerk of the Appellate Courts file his brief. In the brief, Franklin argues the State breached the plea agreement—thereby denying him constitutional due process—when it argued for consecutive sentences after the district court determined his criminal history category to be B. The premise underlying Franklin's argument is fundamentally flawed because the State did not breach the plea agreement. As we have explained, Franklin knowingly and voluntarily entered into an agreement that called for the State to join in a

4

recommendation for a 247-month sentence disposing of both district court cases. Whether the recommendation would entail consecutive or concurrent sentences depended upon Franklin's criminal history. The State abided by the arrangement, and the district court sentenced Franklin in conformity with the plea agreement. There was no breach and, therefore, no due process violation.

For his other point on appeal, Franklin contends he was improperly found guilty of direct contempt rather than indirect contempt because the district court judge deciding the issue did not witness the contemptuous conduct. Franklin misconstrues the difference between direct contempt and indirect contempt. But even if he were correct, he alleges no actual prejudice from the purported mislabeling that would call into question the sufficiency of his conviction.

Contempt committed "during the sitting of the court" or "in its . . . presence" is direct contempt. K.S.A. 20-1202. All other contemptuous conduct or behavior—such as a willful refusal to abide by an injunction—constitutes indirect contempt. K.S.A. 20-1202. Here, Franklin's disputed conduct plainly occurred in front of a district court judge during a trial and, therefore, met the statutory definition of direct contempt. A different district court judge acted as the fact-finder in determining whether Franklin behaved contemptuously. But that doesn't alter the character of the alleged misconduct or somehow make it an indirect contempt.

For example, if a district court believes an appropriate punishment for a direct contempt—bad conduct occurring during a judicial proceeding—could exceed six months in jail, the contemnor may request a jury trial. The jurors would then be the fact-finders and would return a verdict of guilty or not guilty after hearing evidence. The contempt, however, wouldn't change from direct to indirect simply because the district court judge who witnessed the bad conduct didn't make the factual findings or determine guilt or innocence.

5

This case is no different. Franklin's conduct remained a direct contempt, if it was contempt at all. And, indeed, it was. Even Franklin has not disputed the sufficiency of the evidence supporting his conviction. We affirm the contempt finding and the 90-day jail sentence.

Affirmed in part and dismissed in part.