IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 120,390

STATE OF KANSAS,
*Appellee*,

v.

DAVID PATRICK MCNABB,
*Appellant.*

SYLLABUS BY THE COURT

First-degree premeditated murder is an off-grid person felony subject to a presumptive hard 50 sentence. Under K.S.A. 2019 Supp. 21-6620(c)(1)(A), however, a district court may depart from this presumptive sentence if "the sentencing judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose" a hard 25 sentence.

Appeal from Linn District Court; MARK ALAN WARD, judge. Opinion filed January 8, 2021. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, was on the brief for appellant.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt,* attorney general, were on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.: David Patrick McNabb pled no contest to two counts of first-degree premeditated murder, felony theft, and interference with law enforcement after admitting he killed his grandmother Betty McNabb and uncle Kenneth McNabb. Before sentencing,

1

McNabb moved for a downward durational departure from the presumptive hard 50 sentence for the two murders. The court rejected McNabb's motion and sentenced McNabb to serve two consecutive hard 50 sentences. McNabb appeals the district court's denial of his motion for a downward durational departure.

Before the court accepted McNabb's plea, the State summarized its evidence against McNabb. On November 12, 2016, members of the McNabb family reported Betty and Kenneth missing to the Linn County Sheriff's Office. Family members could not locate Betty and Kenneth inside their home and confirmed with neighbor Robert Thayer that he had not seen Betty or Kenneth for about three days. Law enforcement reported to Betty and Kenneth's residence and examined the home, finding blood throughout, including a large saturation stain. That blood was later found to be the blood of Betty McNabb.

While at Betty and Kenneth's home, law enforcement officers learned that McNabb contacted Steve Melton the day before Betty and Kenneth were reported missing. McNabb showed up at Melton's house on November 11, 2016, asking for Melton to help him move a vehicle. McNabb brought a white SUV to Melton's residence and told Melton he needed to get rid of it. After receiving the information about McNabb's interaction with Melton, law enforcement visited Melton's property and discovered a white SUV registered to Kenneth McNabb.

Law enforcement then located and interviewed McNabb. McNabb told investigators that he had argued with Betty and Kenneth. And during that altercation, McNabb shot both Betty and Kenneth with a .22 caliber revolver. McNabb then told investigators that he placed the bodies of Betty and Kenneth into two 55-gallon barrels and loaded them into his Ford F-150 pickup truck. McNabb then drove the barrels to a

2

bridge and threw them into a river along with the revolver. Law enforcement searched nearby bridges and rivers based on this information, but they were unable to locate the barrels allegedly containing the bodies of Betty and Kenneth.

Law enforcement executed a search warrant at McNabb's residence the day after he confessed to killing Betty and Kenneth. McNabb lived with his parents and his father told investigators he kept three guns in the residence—including two .22 caliber revolvers. Officers found one of the .22 caliber High Standard revolvers in the master bathroom of the home. This gun appeared "clean" unlike the other two guns that were dirty and covered in cobwebs. Later testing revealed McNabb's fingerprints on the .22 found in the master bathroom.

After McNabb was arrested, Kendra Renn contacted law enforcement and told them she witnessed McNabb's Ford F-150 truck pull onto her property on November 10, 2016. McNabb's truck pulled into the back of the property in a brush burn area. Renn did not know why McNabb was on her property, but she figured McNabb and Renn's husband were working on a project together.

With this information, law enforcement officers found a burial site on the back side of Renn's property concealed by a tree line. Law enforcement excavated the bodies of Betty and Kenneth McNabb from this burial site. Betty's body was nude and had nylon rope around her lower torso and feet. Kenneth's body was dressed in overalls. Kenneth's right foot was severed and found in a brown boot in the burial site. His left foot was still attached to his body but almost completely severed.

Dr. Altaf Hossain at Frontier Forensics performed autopsies on Betty and Kenneth. Dr. Hossain determined that Betty died from blunt force trauma to her head. Betty suffered a fractured skull on the right side of her head, consistent with being hit by a non-edged blunt instrument. Dr. Hossain found no evidence of Betty being shot.

Dr. Hossain found three gunshot wounds in Kenneth's body—one in his upper chest with a front to back trajectory, one in the interior lower neck with a front to back trajectory, and one in the right lateral lower neck with a front to back and downwards right to left trajectory. Dr. Hossain determined that all the projectiles recovered from Kenneth's body appeared to be the size of a .22 caliber projectile. A firearm examination also determined that a bullet fragment removed from Kenneth's body was consistent with being shot from the revolver found in the master bathroom.

The court accepted McNabb's no contest plea to two counts of first-degree premeditated murder, theft, and interference with law enforcement based on these facts. Before sentencing, McNabb moved for a downward durational departure requesting that the court impose hard 25 sentences for each count of premeditated murder instead of the presumptive hard 50 sentences. McNabb's motion listed numerous mitigating factors including:  McNabb did not have any prior felony convictions; if the crime had been committed before 2013 it would not have been off-grid; if the crime was committed five years ago, the maximum sentence would be two combined sentences of hard 25 years; the departure sentence was not disproportionate to the severity level of the crime when weighed against mitigating factors; his age at the time of the crime; he had nothing to gain from the incident; the victims' family favored a nonprison sentence; character evidence showed he was not a danger to the public; he was well behaved while incarcerated; he had supportive family and friends in the immediate area; he was receptive to rehabilitation; he accepted responsibility for his actions and was extremely remorseful; and he wanted to move on with his life as a law abiding citizen.

The court rejected McNabb's motion finding the evidence produced did not rise to substantial and compelling circumstances for the court to depart from the presumptive

sentence. The court ordered McNabb to serve two hard 50 sentences consecutively for the two murders. McNabb appeals the district court's denial of his motion for a downward durational departure.

ANALYSIS

McNabb argues the district court abused its discretion in denying his motion because McNabb presented mitigating evidence showing he was a qualified candidate for parole at the earliest release date. We review a district court's decision not to depart from a presumptive sentence for abuse of discretion. *State v. Galloway*, 311 Kan. 238, 252, 459 P.3d 195 (2020). Thus, McNabb must show that the district court's decision (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on a factual error. See *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018) (noting that the party asserting an abuse of discretion bears the burden of demonstrating the abuse).

First-degree premeditated murder is an off-grid person felony subject to a presumptive hard 50 sentence. K.S.A. 2019 Supp. 21-5402(b); K.S.A. 2019 Supp. 21-6620(c)(1)(A); K.S.A. 2019 Supp. 21-6623. The district court, however, may depart from this presumptive sentence if "the sentencing judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose" a hard 25 sentence. K.S.A. 2019 Supp. 21-6620(c)(1)(A), (c)(2). K.S.A. 2019 Supp. 21-6625(a) sets out a nonexclusive list of mitigating circumstances a district court may consider in determining whether substantial and compelling reasons for departure exist:

"(1) The defendant has no significant history of prior criminal activity.

"(2) The crime was committed while the defendant was under the influence of extreme mental or emotional disturbances.

5

"(3) The victim was a participant in or consented to the defendant's conduct.

"(4) The defendant was an accomplice in the crime committed by another person, and the defendant's participation was relatively minor.

"(5) The defendant acted under extreme distress or under the substantial domination of another person.

"(6) The capacity of the defendant to appreciate the criminality of the defendant's conduct or to conform the defendant's conduct to the requirements of law was substantially impaired.

"(7) The age of the defendant at the time of the crime.

"(8) At the time of the crime, the defendant was suffering from posttraumatic stress syndrome caused by violence or abuse by the victim."

On appeal, McNabb does not assert new evidence to support his request for a downward durational departure. He reprises the arguments he presented to the district court and argues the district court abused its discretion by ruling against him. McNabb does not suggest the lower court made any mistake of law or fact. McNabb has failed to show the district court abused its discretion—i.e., that no reasonable person would agree with the district court's assessment of whether the mitigating circumstances were substantial and compelling.

McNabb fails to explain why a pre-2011 statute allowing a hard 25 sentence should have any impact on this case. Here, the murders occurred in the fall of 2016. At the time of the murders, the presumptive sentence for first-degree premeditated murder was life without the possibility of parole for at least 50 years. See K.S.A. 2016 Supp. 21-6620(c)(1)(A); K.S.A. 2019 Supp. 21-6623. McNabb also argues his lack of prior felonies, his age, and his mental capacity—all statutory mitigating factors to consider

6

when weighing a downward durational departure—presented facts that a reasonable court would find as evidence suggesting a departure was appropriate. McNabb was 31 when he killed Betty and Kenneth McNabb. Before this crime, McNabb's only prior crime was a DUI in 2011. And while Dr. Mitchell Flesher diagnosed McNabb with generalized anxiety disorder and a borderline range of intellectual functioning, Dr. Flesher also testified that McNabb had substantial capacity for judgment when the offense was committed. Based on these facts, we fail to see how the court's decision was unreasonable.

McNabb's additional mitigating evidence not discussed under K.S.A. 2019 Supp. 21-6625(a) is likewise unpersuasive. He argues he was extremely remorseful and references the character evidence presented at sentencing that suggested he was not a danger to the public. But McNabb fails to show that the court abused its discretion by imposing the presumptive sentences despite his evidence of remorse. As the record shows, the sentencing judge listened to this evidence and considered it. Moreover, evidence of remorse and good character do not automatically require a district court to impose a lesser sentence. See, e.g., *State v. Brune*, 307 Kan. 370, 373, 409 P.3d 862 (2018) (upholding court's decision to impose consecutive hard 25 sentences even though defendant expressed remorse and claimed he intended to enroll in rehabilitation programs); *State v. Baker*, 297 Kan. 482, 485, 301 P.3d 706 (2013) (upholding court's sentence even though defendant expressed remorse and accepted responsibility). Thus, McNabb has failed to show that the district court abused its discretion by rejecting McNabb's motion despite McNabb's evidence of remorse and good character.

Lastly, McNabb argues the court abused its discretion by ignoring the State's recommendation to order the hard 50 sentences to run concurrent. Trial courts, however, are not bound by recommendations given by the State under a plea agreement. *State v. Beck*, 307 Kan. 108, 110, 406 P.3d 377 (2017). And when ordering the hard 50 sentences to run consecutive, the court explained this decision reflected "that [McNabb] killed two

7

separate people." McNabb fails to show that this logic is misguided or unreasonable. We therefore find that the court did not abuse its discretion and McNabb's consecutive hard 50 sentences are affirmed.

Affirm.

BEIER, J., not participating.

MICHAEL E. WARD, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Ward was appointed to hear case No. 120,390 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court by the retirement of Chief Justice Lawton R. Nuss.